UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                           :
UNITED STATES OF AMERICA,          :        CASE NO. 1:06cr128
                                                           :
        Plaintiff,                             :        JUDGE JAMES S. GWIN
                                                           :
vs.                                                      :        OPINION AND ORDER
                                                           :        [Resolving Doc. Nos. 20, 30]
ROBERT C. FITZGERALD,                   :
                                                           :
        Defendant.                           :
                                                           :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

       Defendant Robert C. Fitzgerald moves the court to suppress certain evidence. [Docs. 20, 30]. The defendant seeks to stop the introduction of drugs and cash recovered at the scene of his March 2, 2006 arrest and also statements he may have made to police officers during and after the arrest. The Government opposes the motions to suppress, and the defendant has replied. For the reasons set forth below, the Court **DENIES** the defendant's motions to suppress.

                                  I.  Background

       On March 2, 2006, Cleveland Police Officers Earl Holcomb and Lenny Moore patrolled the Fifth District on Cleveland's east side. At approximately 6:30 a.m., the dispatcher radioed these officers and told the officers that a group of four-to-six men were fighting in the vicinity of East 80th Street and Golden Avenue. The dispatcher stated that it was unknown whether the men were armed. [Tr. at 60]. A bystander phoned the dispute into dispatch and identified herself, but did not say that guns were involved. [Tr. at 19, 58]. The dispatcher directed Holcomb and Moore and two other

-1-

Case No. 1:06cr128
Gwin, J.

officers to the scene. The area in question is known for high levels of drug activity, prostitution, and car thefts. [Tr. at 17]. Both Moore and Holcomb believed that the altercation may have involved guns. Officer Holcomb based this belief on his misunderstanding the initial dispatch. [Tr. at 59, 60].

As Officers Holcomb and Moore approached the scene, the other officers radioed Holcomb and Moore to tell them that two men fled the area and ran south on East 80th to Central Avenue. Holcomb and Moore drove to Central Avenue in pursuit. En route, dispatch again radioed Holcomb and Moore to inform them that another citizen had phoned police and told the police that two men were in the parking lot of a nearby community center standing by a gray truck and two red cars. [Tr. at 28]. The officers drove to that location, but did not see the men.

While the officers were in the parking lot, the dispatcher contacted them again to alert them to a new call. This caller identified herself and said that the two men were now located on Lucia Avenue, south of Central Avenue. [Tr. at 29]. In response, Holcomb and Moore drove to Lucia Avenue and exited their cruiser and panned out in search of the men. Holcomb pulled out his firearm and observed the nearby houses for signs of the men.

At this point, Moore alerted Holcomb that he saw two men inside a nearby car parked in front of the house at 8011 Lucia Avenue. The car was red, and was parked next to a gray truck. [Tr. at 75]. Holcomb, gun drawn, approached the driver's side door and ordered the men to raise their hands and get out of the car. The defendant, Robert Fitzgerald, occupied the driver's seat of the red vehicle. An unidentified male sat in the backseat. Fitzgerald began fumbling with the door and mumbled that he could not open it. Officer Holcomb told Fitzgerald to slide across the seat and get out on the passenger's side. [Tr. at 32]. Meanwhile, Officer Moore kept watch over the man in the

Case No. 1:06cr128
Gwin, J.

backseat.

Fitzgerald exited the car through the passenger side. Holcomb holstered his gun and put a handcuff on one of Fitzgerald's wrists. After one of his wrists had been handcuffed, Fitzgerald attempted to escape, but Holcomb restrained him. Fitzgerald then began to wrestle with Holcomb, elbowing Holcomb in the head and shoving him into the car. Holcomb called Moore for help. In response to Holcomb's request for assistance, Moore left the man in the backseat and attempted to help Holcomb secure Fitzgerald. Fitzgerald kicked Moore's radio out of his hand and attempted to kick Moore's gun out of his hand, knocking Moore to the ground. Holcomb radioed for assistance. During the commotion, the man in the backseat of the car fled.

Another officer arrived and the three officers handcuffed Fitzgerald. [Tr. at 34]. They searched Fitzgerald for weapons and found none. A woman identifying herself as Felicia Solomon stepped out of the house at 8011 Lucia Avenue and said she owned the car that Fitzgerald exited. The car was parked in front of that house. She told police that Fitzgerald had no right to be inside her car and that she did not want people in her car. [Tr. at 35]. Through the police database, the officers confirmed that Ms. Solomon owned the car. Ms. Solomon denied knowing Fitzgerald.

According to Holcomb, Officer Moore recited the defendant's Miranda rights. [Tr. at 36]. Fitzgerald said the car belonged to his baby's mother and also that the man in the backseat held him captive at gunpoint. [Tr. at 37]. Fitzgerald made the statements after receiving his Miranda warning. [Tr. at 37, 48]. Fitzgerald did not ask to see an attorney. The officers placed Fitzgerald in the back of Holcomb and Moore's cruiser.

With Fitzgerald secured, Ms. Solomon consented to a search of the car. Ms. Solomon confirmed to the officers that the driver's-side door was inoperative. The officers searched and

Case No. 1:06cr128
Gwin, J.

found a plastic bag containing suspected crack cocaine on the floor next to the driver's-side door. [Tr. at 38]. The officers also found $2600 in cash under the driver's seat. [Tr. at 90].

The officers drove Fitzgerald to the central prisoner unit and charged him with a total of five offenses: drug possession, two counts of assaulting the officers, criminal trespassing, and resisting arrest. [Tr. at 40].

The next day, March 3, 2006, Officer Jamaal Ansari of the Cleveland Police Department's narcotics unit transported Fitzgerald from the Cleveland city jail to the U.S. Marshall's office for processing on a federal arrest warrant for possessing in excess of 50 grams of crack. After placing Fitzgerald in his car, Officer Ansari recited Fitzgerald's Miranda rights. [Tr. at 143]. Fitzgerald then made statements to Ansari regarding his arrest and the drugs.

This was not Fitzgerald's first run-in with the law. He has previous arrests on drug charges (twice), receiving stolen property, and aggravated robbery. [Tr. at 156].

## II. Legal Standard

*A. Statements*

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. A warrantless arrest passes muster under the Fourth Amendment when there is probable cause to believe a criminal offense has been or is being committed. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

Whether probable cause exists "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id.* The Court must determine

Case No. 1:06cr128
Gwin, J.

"whether the officer's action was justified at its inception," and "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000) (citing *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968)). Generally, any items seized or statements taken incident to an unlawful arrest will be suppressed as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

Consistent with the Fifth Amendment privilege against self-incrimination, a suspect may not be subject to a custodial interrogation until after being advised of his Miranda rights. *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998). The Supreme Court has defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

A criminal defendant may waive his Miranda rights if the waiver is made voluntarily, knowingly, and intelligently. *Id.* To determine the nature of the waiver, the Court looks to the totality of the circumstances., including the defendant's background and experience. *Arizona v. Fulminante*, 499 U.S. 279, 285 (1991); *North Carolina v. Butler*, 441 U.S. 369, 374-75 (1979). The Government must prove the voluntariness of a waiver by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 482-84 (1972).

*B. Seized Items*

A criminal defendant may also move to suppress items seized pursuant to an unlawful arrest as fruit of the poisonous tree. But to succeed, the defendant must have had a legitimate expectation of privacy in the searched area. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980). No such legitimate expectation extends to areas that the defendant occupied unlawfully. in the area searched." *Rawlings*

Case No. 1:06cr128
Gwin, J.

*v. Kentucky*, 448 U.S. 98, 104 (1980); *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (defining a "search" for purposes of the Fourth Amendment as a government infringement upon "an expectation of privacy that society is prepared to consider reasonable").

### III. Analysis

*A. Statements*

The defendant moves to suppress statements he made to Officers Holcomb and Moore during his arrest, and also those he made to Officer Ansari the next day. The Court denies the motion.

It is not clear what statements Fitzgerald made to Holcomb and Moore during his arrest, or even that those statements would assist the prosecution. Officer Moore recited Fitzgerald's Miranda rights before questioning him. Fitzgerald may have responded to some of Moore's questions after receiving his rights.

The police had probable cause to detain Fitzgerald, based on their search of the red vehicle and finding cocaine in a position adjacent to the location that Fitzgerald had occupied in the vehicle. There is no indication that the police questioned Fitzgerald before reciting his Miranda rights. To the extent Fitzgerald waived those rights, his sound state of mind and background indicate that he did so knowingly and voluntarily. The Court thus will not suppress the statements made incident to the arrest.

Nor will the Court suppress Fitzgerald's statements to Ansari. Ansari reminded Fitzgerald of his rights when he picked him up from the Cleveland jail. Fitzgerald understood his rights, having heard them the day before and presumably during his previous arrests. As the defendant notes, Ansari was under no obligation to record his conversation with Fitzgerald. *United States v.*

Case No. 1:06cr128
Gwin, J.

*Dobbins*, No. 96-4233, 1998 U.S. App. LEXIS 21382, at *10 (6th Cir. Aug. 27, 1998). These circumstances do not merit suppression.

*B. Seized Items*

The defendant also moves to suppress the drugs and cash recovered from Ms. Solomon's car. The Court denies the motion.

Defendant had no legitimate expectation of privacy in the unauthorized red vehicle. *United States v. Hensel,* 672 F.2d 578 (6th Cir.1982) (holding that, because "the defendant had no legitimate expectation of privacy in the stolen truck or its contents," he thus, "had no standing to challenge the search of the truck"). In *Smith v. Maryland*, 442 U.S. 735, 740 (1979), the Court emphasized that not all subjective expectations of, or hopes for, privacy were afforded Constitutional protection: "The second question is whether the individual's subjective expectation of privacy is one that society is prepared to recognize as 'reasonable,' whether . . . the individual's expectation, viewed objectively, is 'justifiable' under the circumstances." *United States v. Stamper*, 91 Fed. Appx. 445, 455-56 (6th Cir. 2004). *See Rakas v. Illinois*, 439 U.S. 128, 143 n. 12 (1978) (affirming that a defendant has no capacity to challenge an allegedly unlawful search of premises where the defendant's presence on those premises was unlawful and illustrating this principle with a defendant's presence in a stolen vehicle); *United States v. Hensel*, 672 F.2d 578 (6th Cir.1982) ("the defendant had no legitimate expectation of privacy in the stolen truck or its contents," thus, he "had no standing to challenge the search of the truck"); *United States v. Ott*, No. 99-3300, 2000 U.S. App. LEXIS 22405, at *8 (6th Cir. Aug. 28, 2000) ("Generally, to have standing to contest a search, a defendant must have a legitimate expectation of privacy in the thing that was searched. This Court has held that a defendant has no legitimate expectation of privacy in a stolen vehicle, and thus has

Case No. 1:06cr128
Gwin, J.

no standing to contest a warrantless search of the vehicle.") (citations omitted); *United States v. Tropiano*, 50 F.3d 157, 161 (2d Cir. 1995) ("[W]e think it obvious that a defendant who knowingly possesses a stolen car has no legitimate expectation of privacy in the car.").

It is beyond dispute that Fitzgerald did not have Solomon's permission to be in her car when the police found him. Fitzgerald thus had no legitimate expectation of privacy in the car. The police searched the car only after Solomon, the rightful owner, consented. In deciding whether society affords Fitzgerald justification for any expectation of privacy, the Court asks whether society find it reasonable for an individual to unlawfully inhabit someone else's motor vehicle? The Court thinks not. As *Stamper* makes clear in its analysis, Fitzgerald has no capacity to challenge the search of Solomon's car.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** the defendant's motions to suppress. [Docs. 20, 30].

IT IS SO ORDERED.

Dated: June 15, 2006    s/ *James S. Gwin*
                         JAMES S. GWIN
                         UNITED STATES DISTRICT JUDGE